J-S38019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREEK BROCENBROUGH | : | |
| | : | |
| Appellant | : | No. 513 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005712-2021

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.: **FILED NOVEMBER 24, 2025**

Appellant, Tyreek Brocenbrough,[1] appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for possession of a firearm prohibited, possessing instruments of crime ("PIC"), terroristic threats, and resisting arrest.[2] We affirm.

The relevant facts and procedural history of this matter are as follows. In April 2021, Syeeda Henry-Dawson, her minor son, and Appellant (her boyfriend) lived together at her residence in Philadelphia. On April 18, 2021, Ms. Henry-Dawson returned home in the early morning hours and began to change into her nightgown. At that time, Appellant began to argue with her.

---

[1] Some references in the record alternatively spell Appellant's last name as "Brockenbrough" or "Brokenbrough."

[2] 18 Pa.C.S.A. §§ 6105, 907, 2706, and 5104, respectively.

Appellant came into the bedroom and hit Ms. Henry-Dawson about the face and neck. Ms. Henry-Dawson fled down the steps and Appellant, who had retrieved her firearm from its lockbox in her closet,[3] followed her. Appellant pointed the gun at Ms. Henry-Dawson and said, "Bitch, I'm going to kill you." (N.T. Trial, 8/26/22, at 15). Ms. Henry-Dawson fled to an outside balcony deck and locked the door, yelling, "Call the cops, call the cops" before remembering she had left her 10-year-old son inside. (*See id.* at 17). She attempted to get back into the house but could not.

When officers, including Officer Michael Davis, arrived on scene, they found Ms. Henry-Dawson crying and hysterical. Appellant opened the basement door to the house and informed police that they needed to lock up Ms. Henry-Dawson, and then he shut the door. Appellant exited the home and when officers approached said, "If you come in here, I'm going to hit you," before running back up the steps. (*See id.* at 68). Ms. Henry-Dawson's son notified police of the firearm and officers moved to detain Appellant. In the ensuing scuffle, Appellant attempted to bite one of the officers but caught his jacket. Officers placed Appellant in handcuffs and custody, and the firearm was recovered on the steps from the first floor.

On August 26, 2022, the matter proceeded to a bench trial, after which the court convicted Appellant of the aforementioned charges. On December

_____

[3] Ms. Henry-Dawson testified that the gun was registered in her name, and that she kept it in a lockbox because her 10-year-old son lived in the house with her. She kept one key, and Appellant kept the other key on his key ring.

16, 2022, the court sentenced Appellant to 5 to 10 years of incarceration for possession of a firearm prohibited and imposed no further penalties on the remaining charges.[4]

On December 20, 2022, Appellant timely filed a post-sentence motion requesting reconsideration of his sentence. Appellant acknowledged that the court had sentenced him at the bottom end of the mitigated guidelines, but he indicated that he had been nervous and had not appropriately articulated his remorse in his allocution. Appellant also requested the opportunity to present additional testimony from some of his children's mothers regarding the ways in which his incarceration would affect their lives financially and emotionally. On April 19, 2023, the court denied Appellant's motion by operation of law. Appellant did not file a direct appeal.

On March 20, 2024, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA")[5] averring that counsel had failed to file a requested direct appeal on his behalf. On August 1, 2024, appointed counsel filed an amended PCRA petition. On February 13, 2025, the court granted Appellant's petition and reinstated his direct appeal rights *nunc pro tunc*.

On February 18, 2025, Appellant timely filed a notice of appeal *nunc pro tunc*. On February 19, 2025, the court ordered Appellant to file a Pa.R.A.P.

_____

[4] At sentencing, the parties agreed that the standard range sentence for Appellant's offense, factoring in his prior record score and the offense gravity store, was 72 to 90 months of incarceration, plus or minus twelve. (**See** N.T. Sentencing, 12/16/22, at 5).

[5] 42 Pa.C.S.A. §§ 9541-9546.

1925(b) statement of errors complained of on appeal. On February 27, 2025, Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

> 1. Whether the evidence was insufficient as a matter of law to sustain a guilty verdict for Possession of a Firearm Prohibited?

> 2. Whether the [c]ourt was in error in denying the Motion to Reconsider Sentence?

(Appellant's Brief at 8).

In Appellant's first issue, he argues that the Commonwealth did not prove his possession of the firearm. According to Appellant, the firearm was registered in the name of Ms. Henry-Dawson, and there was no evidence that Appellant had actual possession of the firearm. Although Appellant admits that testimony established his ownership of a second key to the lockbox, he contends that the second key was never found. Further, Appellant asserts that there was no other direct evidence of his possession, such as his DNA or fingerprints on the firearm. Appellant concludes that the evidence was insufficient to sustain his conviction for persons not to possess firearms on this basis, and this Court must grant relief. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the

verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Sebolka**, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting **Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Uniform Firearms Act provides, in relevant part:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

- 5 -

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession[.]" **Commonwealth v. Jones**, 874 A.2d 108, 121 (Pa.Super. 2005) (quoting **Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa.Super. 2005)). "Constructive possession is the ability to exercise conscious control or dominion over the illegal [item] and the intent to exercise that control." **Id.** "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." **Id.** "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Valette**, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

**Commonwealth v. Parish**, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, the trial court observed:

> Appellant's argument is not one of "constructive" possession but relies instead on "weight and sufficiency of the evidence" or witness credibility, as he offers theories never substantiated at trial. Appellant's claim that the firearm was in "possession" of the complainant inside a lockbox without a key offers no explanation for the recovery of the gun in plain view from the living room while Ms. [Henry-Dawson] was trapped outside.

The decision in this case is consistent with the evidence. This court, as the fact finder, determined each witness' testimony and the evidence presented to be credible. The combined testimony with the Body Worn Camera (BWC)[6] video confirmed Appellant was in physical possession of the firearm. The court viewed Ms. [Henry-]Dawson as a convincing witness, accepting her account, emphasizing "it's unlikely that any woman would run outside at 1 [or] 2:00 in the morning in her nightgown, unless she was chased out." Her story was supported by Officer Davi[s'] credible testimony which provided information that matched or supported her version of events. Further, the Commonwealth presented evidence by stipulation that Appellant was ineligible to possess a firearm due to a prior conviction under case docket number CP-51-CR-1208091-2003.

… Appellant asserts [the] Commonwealth failed to prove his [18 Pa.C.S.A.] § 6105 conviction, contesting his physical possession of a firearm, alleging it was in the possession of the complainant or in the lockbox. This claim is specious and wholly without merit. The complainant was "locked out" of the residence, on the deck screaming and crying in her nightgown when the police arrived—a factual scenario supporting her claim that she was chased out of the house by Appellant who was holding the gun. The police entered the home through the basement and recovered the firearm in plain view in the living room (the area where Appellant was retreating)—not a lockbox. This evidence convincingly demonstrates Appellant's possession of a firearm, as defined by statute. The issue of DNA testing was never raised at trial and is irrelevant. The court determined the testimony and evidence presented at trial were sufficient to support the finding of Appellant's guilt for Possession of a Firearm Prohibited as well as the other related charges for which he was convicted.

(Trial Court Opinion, 3/19/25, at 5-6) (some citations omitted).

The record supports the trial court's analysis. Here, the testimony and

_____

[6] The body-worn camera video was not included in the certified record.

evidence showed the following: Ms. Henry-Dawson kept the firearm stored in a lockbox, to which Appellant had access. Appellant took the gun and threatened Ms. Henry-Dawson with it, causing her to flee to the outside balcony. The gun was recovered, in plain view, in the living room of the home. The trial court found the testimony of Ms. Henry-Dawson and the officers credible. This evidence was sufficient to prove Appellant's possession over the firearm in question.[7] Further, because the parties stipulated that Appellant's prior record prevented him from possessing a firearm, the evidence was sufficient to sustain his conviction. *See* 18 Pa.C.S.A. § 6105(a)(1); *Sebolka, supra*.

_____

[7] Curiously, Appellant cites *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983) in support of his argument. In *Macolino*, the defendant and his wife were convicted of possession of a controlled substance with intent to deliver, after police officers recovered, among other evidence, two bags of cocaine from a jointly occupied clothing closet. On appeal, the Pennsylvania Supreme Court discussed the issue of constructive possession in an area jointly controlled by husband and wife, and the Court ultimately held that constructive possession can be found in one defendant when both spouses have equal access to an area where the illegal substance is found. The Court held that the fact-finder, examining the evidence in its totality, could reasonably conclude that the defendant was aware of the cocaine and other items in his bedroom commonly used for cocaine use and trafficking, and that he had exercised a conscious dominion over the illegal substance. The Court specifically noted it was no defense that the defendant's wife could also have maintained a conscious dominion over the cocaine because possession of contraband need not be exclusive: two or more can possess the same thing at the same time. *See id.*

If anything, *Macolino* supports Appellant's conviction, as both Appellant and Ms. Henry-Dawson possessed keys to the lockbox, thereby establishing joint control. Additionally, as mentioned, there was direct evidence of Appellant's possession based on the testimony of Ms. Henry-Dawson, which the court found credible.

In Appellant's second issue, he contends that the court erred in denying his motion to reconsider his sentence. Appellant asserts that despite the Commonwealth's recommendation of a standard range 4-to-8-year sentence, the court imposed a harsher sentence of 5 to 10 years' imprisonment without adequate consideration of Appellant's mitigating circumstances, which included his non-violent criminal history, effort to support his family, and significant personal adversity, which included witnessing his father's shooting as a child. Appellant concludes that the court abused its sentencing discretion by imposing an excessive sentence that did not properly take into consideration mitigating circumstances, and this Court should vacate his judgment of sentence. We disagree.

As presented, Appellant's issue challenges the discretionary aspects of sentencing. *See Commonwealth v. Clarke*, 70 A.3d 1281 (Pa.Super. 2013), *appeal denied*, 624 Pa. 671, 85 A.3d 481 (2014) (stating contention that court focused solely on serious nature of crime without adequately considering protection of public or defendant's rehabilitative needs concerns court's sentencing discretion); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing).

"[C]hallenges to the discretionary aspects of sentencing do not entitle

an appellant to an appeal as of right." ***Commonwealth v. Perzel***, 291 A.3d 38, 46 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 301 A.3d 426 (2023). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by, *inter alia*, including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth***

*v. Troell*, 290 A.3d 296, 299 (Pa.Super. 2023) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010)).

Generally, "[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." *Cruz-Centeno, supra* at 545 (quoting *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super. 1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995)). Nevertheless, this Court has held that a claim that the court failed to consider factors set forth under Section 9721(b) and focused solely on the seriousness of the defendant's offense raised a substantial question. *See Commonwealth v. Trimble*, 615 A.2d 48 (Pa.Super. 1992). *See also Commonwealth v. Caldwell*, 117 A.3d 763 (Pa.Super. 2015), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (noting that this Court has held that excessive sentence claim, in conjunction with assertion that court failed to consider mitigating factors, raises substantial question).

Instantly, Appellant filed a timely notice of appeal *nunc pro tunc* and included in his appellate brief a Rule 2119(f) statement. Further, Appellant's claim arguably raises a substantial question for our review. *See id.*; *Trimble, supra*. However, Appellant did not appropriately preserve his sentencing issue in a post-sentence motion. Contrary to his current claim that his sentence is excessive, in his post-sentence motion, Appellant admitted that

his sentence was in the mitigated range.[8] (*See* Motion for Reconsideration, 12/20/22, at 1-2). Rather, Appellant complained in his post-sentence motion that he wanted the opportunity to present additional mitigation testimony, and to apologize for his apparent lack of remorse at allocution. (*See id.*) Thus, we cannot say that Appellant has preserved his sentencing issue, resulting in waiver on appeal. *See Evans, supra*.

Nevertheless, even if properly preserved, Appellant's claim would not entitle him to sentencing relief. "[S]entencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion." *Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa.Super 2022). "In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* at 527-28. Additionally, "long standing precedent … recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa.Super. 2005). A trial court does not abuse this discretion unless the

---

[8] At the time of Appellant's sentencing, Appellant's prior record score was a five, and his offense gravity score for a conviction under Section 6105(a)(1) was eleven. *See* 204 § 303.15. Thus, a standard range sentence was 72 to 90 months, plus or minus 12. *See* 204 § 303.16(a).

sentence is "grossly disparate" to the conduct at issue, or "viscerally appear[s] as patently unreasonable." ***Commonwealth v. Gonzalez–Dejusus***, 994 A.2d 595, 599 (Pa.Super. 2010).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, "a court is required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Id.*** Moreover, where the sentencing court had the benefit of a [pre-sentence investigation ("PSI") report], the law presumes the court was aware of and weighed relevant information regarding a defendant's character along with mitigating statutory factors. ***Commonwealth v. Tirado***, 870 A.2d 362, 366 n.6 (Pa.Super. 2005).

Here, the trial court stated at sentencing:

> As I indicated, I do remember the facts of this case, and there is a gun in the house. Even if we assume for the truth of the matter asserted that if you didn't know the law, you knew there was a gun in the house. And it was in a lockbox, per the testimony of Miss Henry-Dawson.

And when she came in that night, you all had a disagreement. She also testified that there was an altercation and you hit her, and then you got the gun and you pointed the gun at her. And she had to run out [of] the house in her nightgown. And in fear of her own life, she ran out [of] the house and had to leave her child in the house. And I cannot imagine not only the fear of her own life, but the fear for her child, too.

Now, whether or not she thought you might harm her child, but as a mother, imagining her child having to see his mother shot or killed. Even as a child seeing his mother in that level of danger is a lot to go through. And it was certainly reasonable for her to believe, as well as her child, that she could be killed when you say to her, I'm going to kill you. Because as I emphasize in this courtroom, a gun serves no other purpose.

So, when you sit here and say, you know, I know she's in therapy, and I hope she can get her life around, I mean that's a level of trauma that you can't just brush off, like oh, yeah, go ahead, get your life. No. [A]nd she didn't pull a gun on you, even though you put your hands on her in her house.

And after everything, I still don't hear an apology, I hear blame, it's her fault 'cause we were arguing, we were both intoxicated. That doesn't give you the right to threaten someone's life.

And you don't have a history or a background of doing this, because it only takes one time. And if that gun had slipped, you might not be sitting here. She might not be sitting here, and her child may not have a mother.

[Appellant,] what concerns me is I still – I don't think you understand the magnitude of your actions and the impact on the life of the victim. And you express more the impact this had on you, and that's not why you're sitting here. What happened to you isn't why we're here.

In determining your sentence, I am taking into account the need to protect the public, the gravity of this offense as it relates to the impact on the life of Miss Henry-Dawson and

on the community, but I'm also taking into consideration your [rehabilitative] needs.

I am considering the sentencing guidelines. I will also consider the fact that you did have a waiver trial, and I will grant you some mitigation with that. I thoroughly reviewed the Presentence investigation report, my notes on the testimony from the trial, the testimony that's been presented here today at the sentencing, from both [Ms. Henry-Dawson] and [Appellant's current paramour,] as well as your allocution and the arguments of counsel.

(N.T. Sentencing, 12/16/22, at 27-30). The court then imposed the sentence of 5 to 10 years' imprisonment, which is in the mitigated range, with the additional conditions that Appellant undergo drug screenings on parole, complete anger management classes, and included a stay-away order for Appellant's entire period of supervision. In its opinion, the court elaborated that it had issued a mitigated-guideline sentence on the sole charge of persons not to possess, with no further penalty on the remaining charges. Further, the court noted:

Here, Appellant's claim of the [c]ourt's insufficient consideration of mitigation is baseless, as evidenced in the record, the [c]ourt "thoroughly reviewed" the PSI. As detailed in the report, Appellant was raised by his beloved maternal great-grandmother following the tragic deaths of his father in a house fire and his grandmother in a train accident. His mother, who suffered from drug addiction most of his life, was also unable to care for him. This tragedy, however, did not discourage him from a life of drug dealing. The PSI revealed Appellant's extensive criminal history of Possession with Intent to Deliver (4 Juvenile Felonies and 3 Adult convictions), convictions for DUI, Possession and subsequent PFA Contempt Violation. His adult record totaled six convictions, twelve commitments, and eight violations of probation/parole resulting in seven revocations. Appellant also worked legitimate jobs, recently holding a position as a forklift operator at Tyson Chicken,

> where a portion of his salary was deducted to cover child support for his three children. Appellant conversely stated in the PSI that he is "most likely going to quit this job in the near future as his girlfriend is supporting him emotionally and financially." Though admittedly a "lifelong marijuana user," Appellant declared "he has no need for a drug treatment program at this time[,]" denying the possibility of substance abuse issues.

(Trial Court Opinion, 3/19/25, at 10-11) (some citations omitted). The court reiterated that it had imposed a mitigated guideline sentence and exercised its discretion appropriately given the aforementioned considerations.

The record belies Appellant's claim that the court failed to appropriately consider mitigating factors. The court's on-the-record explanation of its sentence demonstrates that it had the benefit of a PSI report and carefully considered and weighed the relevant sentencing factors. *See* 42 Pa.C.S.A. § 9721(b); *Tirado, supra*; *Griffin, supra*. The court ultimately determined that the severity of the offense, Appellant's apparent lack of remorse, and criminal history necessitated the sentence as imposed, which was, as the court correctly notes, in the mitigated range. *See id.* On appeal, Appellant essentially asks this Court to reweigh the sentencing factors in his favor. We decline to do so. *See Schroat, supra*. We discern no abuse of discretion in the court's imposition of sentence. Thus, even if Appellant had preserved his sentencing claim, it would merit no relief. *See id.* Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/24/2025</u>